UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

OBI ORAKWUE

                Plaintiff,

   - against -

CITY OF NEW YORK, P.O. DEWITT
VICTORIA, individually and in her official
capacity, and P.O.s "JOHN DOE" #1–10,
individually and in their official capacities

               Defendants.

-----------------------------------------------------------X

**MEMORANDUM AND ORDER**
11-CV-6183 (RRM)(VMS)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Obi Orakwue, proceeding *pro se*, brings this action under 42 U.S.C. § 1983

against the City of New York, police officer Victoria DeWitt,[1] and several unnamed police

officers, alleging violations of his constitutional rights stemming from his arrest on January 31,

2011.  Presently before the Court is defendants' motion to dismiss pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure and plaintiff's motion to amend the complaint pursuant to

Rule 15 of the Federal Rules of Civil Procedure.  For the reasons set forth below, defendants'

motion to dismiss the original complaint is GRANTED, and plaintiff's motion to amend is

GRANTED in part and DENIED in part.

## BACKGROUND

      On a Rule 12(b)(6) motion, courts must consider the complaint, any documents

incorporated by reference therein, and any matter of which the court can take judicial notice.  *See*

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider

the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on

---

[1] Although plaintiff refers to this individual as "Dewitt Victoria," her actual name appears to be Victoria DeWitt. (*See* Def.'s Br. at 7 (ECF Pagination).)  Accordingly, the Court will refer to the individually named defendant by her surname, "Dewitt."

Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) (same).  Furthermore, because courts are obligated to construe a pro se plaintiff's papers liberally, "[a] district court deciding a motion to dismiss may consider factual allegations made by a pro se party in his papers opposing the motion," *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (citing *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987)), including documents attached thereto, *see, e.g.*, *Wilson v. Medical Unit Officials*, No. 10-cv-1438, 2011 WL 6780934, at *2 n.6 (E.D.N.Y. Dec. 27, 2011) (finding it proper to consider documents attached to pro se plaintiff's papers submitted in opposition to motion to dismiss and in support of motion to amend); *Rosario v. New York City*, 12-cv-4795, 2013 WL 2099254, at *2 (S.D.N.Y. May 15, 2013) (considering documents attached to pro se plaintiff's opposition to motion to dismiss); *Thayil v. Fox Corp.*, No. 11-cv-4791, 2012 WL 364034, at *1 n.3 (S.D.N.Y. Feb. 2, 2012) (same).

Consequently, the facts, which are assumed to be true for the purposes of this motion, are taken from:  (1) plaintiff's December 20, 2011 complaint in this action, (*Orakwue II* Compl. (11-cv-6183 Doc. No. 1)); (2) plaintiff's memorandum of law in opposition to defendant's motion to dismiss, (Pl.'s Opp. (Doc. No. 42-1)); (3) plaintiff's affidavit in opposition to defendant's motion to dismiss and the exhibits attached thereto, (Pl.'s Aff. (Doc. No. 42-2 & 42-3)); and (4) plaintiff's proposed amended complaint in this action (Proposed Am. Compl. (Doc. No. 48-1)). In addition, as the documents were publicly filed, the Court also takes judicial notice of (5) plaintiff's September 29, 2010 complaint in *Orakwue v. City of New York et al.*, No. 10-cv-4443 (E.D.N.Y. 2010), a previous action involving plaintiff, the City, and individual police officers, (*Orakwue I* Compl. (10-cv-4443 Doc. No. 1)) and (6) the Stipulation of Settlement and Order of

Dismissal that ended that action, (Settlement Agreement (10-cv-4443 Doc. No. 14)).  *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings").

### A. *Orakwue I* and the Settlement Agreement

On September 29, 2010, plaintiff filed suit against the City and Police Officer Keith Doumas, alleging that on November 25, 2009 he was unlawfully arrested and detained following a traffic stop in Queens.  *See Orakwue v. City of New York et al.*, No. 10-cv-4443 (E.D.N.Y. 2010) ("*Orakwue I*").  According to the complaint, on November 25, 2009, plaintiff was "driving lawfully near the intersection of Atlantic Avenue and 78th Street in Queens County," when "defendant officers ordered [him] to pull over and demanded his driver's license, registration, and proof of insurance." (*Orakwue I* Compl. (10-cv-4443 Doc. No. 1) ¶¶ 13–14.)  Plaintiff complied but, "[n]otwithstanding the lack of any evidence or criminal activity" and in the absence of "any reasonable belief that plaintiff engaged in any unlawful activity," the defendants arrested plaintiff, charged him with "Criminal Possession of a Forged Instrument," and held him in custody for approximately forty hours.  (*See Orakwue I* Compl. ¶¶ 15–19.)

Plaintiff, represented by counsel, filed suit and asserted three causes of action:[2]  (1) false arrest under § 1983; (2) denial of the right to a fair trial under § 1983 based on the fabrication of evidence; and (3) municipal liability under § 1983.  (*See Orakwue I* Compl. ¶¶ 21–27.)  In the municipal liability claim, plaintiff alleged that the defendants "while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the

---

[2] The complaint also included a fourth claim for relief, which was duplicative of plaintiff's municipal liability claim. Furthermore, the copy of the *Orakwue I* complaint available on ECF omits two pages:  (1) the sixth page of the complaint, which presents plaintiff's municipal liability claim against the City based upon the November 25, 2009 arrest, and (2) the eighth page of the complaint, which is the signature page.  The Court, therefore, refers to the full complaint as it appears in the Clerk of Court's records.

respective municipality/authority, which is forbidden by the Constitution of the United States."

(*Orakwue I* Compl. ¶ 39.)  Plaintiff further alleged that the:

customs, usages, practices, procedures and rules of the City of New York and the New York City Police Department include, but are not limited to . . . :

    i.   arresting individuals regardless of probable cause in order to inflate the officer's arrest statistics;
    ii.  arresting innocent persons notwithstanding the existence of credible evidence which exonerates the accused of any criminal wrongdoing; and
    iii. arresting individuals regardless of probable cause.

(*Orakwue I* Compl. ¶ 40.)  According to plaintiff, those "foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by [him]."

(*Orakwue I* Compl. ¶ 43.)

On April 1, 2011, the parties filed a signed Stipulation of Settlement and Order of Dismissal ("Settlement Agreement") wherein the defendants agreed to pay plaintiff $10,000 and plaintiff agreed to, among other things, "the dismissal of all claims against the defendants and to release the defendants, and any present or former employees and agents of The City of New York or any agency thereof, from any and all liability, claims, or rights of action *which were or could have been alleged in this action*, including claims for costs, expenses, and attorneys' fees."

(Settlement Agreement (10-cv-4443 Doc. No. 14) ¶ 2 (emphasis added).)  Pursuant to the Settlement Agreement, (*see id.* ¶ 3), plaintiff signed a "General Release" wherein he personally agreed to "release and discharge defendants The City of New York and Keith Doumas; their successor or assigns; and all past and present officials, employees, representatives and agents for the City of New York or any agency thereof, from any and all liability, claims or rights of action *which were or could have been alleged in this action*, including claims for costs, expenses, and

attorneys' fees." (Pl.'s Aff. Ex. G1 (Doc. No. 42-2) at 27 (ECF Pagination) (Exhibit G1).)  The

Honorable Jack B. Weinstein so ordered the Stipulation of Settlement and Order of Dismissal

and closed the case on April 18, 2011.  (*See* Settlement Agreement (10-cv-4443 Doc. No. 14).)

## B.    The Original Complaint

On December 20, 2011, plaintiff filed this action against the City and Police Officer

Victoria DeWitt, alleging that he was unlawfully accosted and arrested following a traffic stop in

Brooklyn.  (*See Orakwue II* Compl. (11-cv-6183 Doc. No. 1).)  According to the instant

complaint, on January 31, 2011, plaintiff was "lawfully waiting for the traffic light at the

intersection of Mother Gaston and Pitkin Avenue in Brooklyn, Kings County" when "defendant

officers ordered [him] to pull over and demanded his driver's license, registration, and proof of

insurance." (*Orakwue II* Compl. ¶¶ 13–14.)  Plaintiff complied, but "[n]otwithstanding the lack

of any evidence of criminal activity," the defendants searched plaintiff, touched his genitals, used

racial and xenophobic slurs, and subsequently arrested plaintiff for "Criminal Driving while

Driver Licence [sic] is revoked." (*Orakwue II* Compl. ¶¶ 15–18.)

Plaintiff spent approximately nine hours in police custody, (*Orakwue II* Compl. ¶¶ 19–

21), before being issued a Desk Appearance Ticket[3] ("DAT") and being released, (Pl.'s Opp. at

14 (ECF Pagination); Pl.'s Aff. Ex. H1 (Doc. No. 42-2) at 29 (DAT issued by Officer DeWitt on

February 1, 2011).)  Pursuant to the DAT, plaintiff appeared in Kings County Criminal Court on

March 3, 2011, (*see* Pl.'s Opp. at 141), where he was told that the case was not on the court's

calendar and was instructed to wait for thirty to ninety days to receive a notice for a new court

date. (*See* Pl.'s Opp. at 14; Pl.'s Aff. Ex. H2 (Doc. No. 42-2) at 31.)  Plaintiff waited as

---

[3] Under New York law, a police officer in certain cases can issue a Desk Appearance Ticket "to an arrestee rather
than holding him or her in custody until a judge is available to conduct an arraignment.  Under this procedure, the
arrestee is released and must return to the criminal court at a future date for arraignment." *Bryant v. City of New
York*, 404 F.3d 128, 132 (2d Cir. 2005) (citing N.Y. Crim. Proc. Law §§ 150.10(1), 150.20).

instructed, followed up with the clerk of court in May, June, and July of 2011, but never received another court date.  (*See* Pl.'s Opp. at 14.)

Plaintiff, proceeding *pro se*, organizes his claims based on this incident into four "claims for relief."  In the first claim for relief, entitled "Deprivation of Federal Civil Rights under 42 U.S.C. § 1983," plaintiff alleges that defendants' conduct "deprived [him] of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution . . . and in violation of 42 U.S.C. § 1983 and 18 U.S.C. §§ 242."  (*Orakwue II* Compl. ¶ 25.)  Plaintiff further alleges that the individual police officers acted "pursuant to the customs, usages, practices, procedures, and rules of the City of New York and the New York City Police Department" and that the conduct "constituted a custom, usage, practice, procedure or rule of [the] respective municipality/authority, which is forbidden by the Constitution."  (*Orakwue II* Compl. ¶¶ 27–28.)

In the second claim for relief, entitled "False Arrest under 42 U.S.C. § 1983," plaintiff alleges that he was "subjected to sexual assault, sexual harassment, racial insult, racial harassment, illegal, improper and false arrest by defendants and taken into custody and caused to be falsely imprisoned . . . without any probable cause, privilege or consent."  (*Orakwue II* Compl. ¶ 31.)

In the third claim for relief, entitled "Denial of Constitutional Rights under 42 U.S.C. § 1983," plaintiff alleges that defendants "created false evidence against [him], and Defendants subsequently failed to present the charges and the seized driver licence [sic] to any judicial authority/court" thereby denying him his "constitutional right to confront his accuser(s)" in violation of the Sixth Amendment.  (*Orakwue II* Compl. ¶ 36.)  Plaintiff further alleges that in creating false evidence and failing to forward his seized driver license to the court, defendants

violated his "right to a fair trial under the Due Process Clause of the Fifth, Fourth and Fourteenth Amendments." (*Orakwue II* Compl. ¶¶ 37.)

Finally, in the fourth claim for relief, plaintiff states a "municipal liability" claim, alleging that the defendants "while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution of the United States." (*Orakwue II* Compl. ¶ 41.) Plaintiff further alleges that the "customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department include, but are not limited to" the three allegedly unconstitutional practices listed in the *Orakwue I* complaint, in addition to several others. (*See Orakwue II* Compl. ¶ 42.) Plaintiff also alleged that the "foregoing customs, policies, usages, practices, procedures and rules of the City of New York and the New York City Police Department were the moving force behind the constitutional violations suffered by [him]." (*Orakwue II* Compl. ¶ 45.)

On December 21, 2012, defendants moved to dismiss plaintiff's complaint pursuant to Rule 12(b)(6). (Doc. No. 26.) Defendants argue that the *Orakwue I* Settlement Agreement and General Release bar plaintiff's current claims in their entirety. (*See* Def.'s Br. (Doc. No. 29) at 12–15 (ECF Pagination); Def.'s Reply (Doc. No. 33) at 9–15 (ECF Pagination).) In the alternative, defendants argue that all of plaintiff's claims fail as a matter of law. (*See* Def.'s Br. at 15–21; Def.'s Reply at 15–28.) In response, plaintiff argues that the Settlement Agreement and General Release are inadmissible in this proceeding, (*see* Pl.'s Opp. (Doc. No. 42-1) at 12, 16–17 (ECF Pagination)), and that, even if these documents were admissible, they would not bar these claims since this incident involved different officers, engaging in different acts at different times, and therefore could not have been raised in *Orakwue I*, (*see id.* at 13–14). Furthermore,

plaintiff argues that the charges resulting from the January 31, 2011 arrest were not adjudicated by the time the Settlement Agreement and General Release were signed and, therefore, his malicious prosecution claim relating to this incident could not have been released.  (*See id.* at 14–15; Pl's Surreply (Doc. No. 43) at 6–7 (ECF Pagination).)

### C.  Plaintiff's Proposed Amended Complaint

On March 29, 2013, several months after defendants filed their motion to dismiss, plaintiff moved to amend the complaint pursuant to Fed. R. Civ. P. 15(a).  (*See* Pl.'s Mot. to Amend (Doc. No. 48); Pl.'s Reply in Supp. of Mot. to Amend (Doc. No. 51).)  In the proposed amended complaint, appended to his motion papers, plaintiff seeks to add a series of allegations relating to two additional traffic stops, one on February 11, 2011 and the second on July 1, 2009, and to add the officers involved in them.[4]  (*See* Proposed Am. Compl. (Doc. No. 48-1) ¶¶ 27–56.)

As to the February 11, 2011 incident, plaintiff alleges that he was sitting in his car when two police officers approached him and demanded his license, registration, and proof of insurance.  (*See id.* ¶¶ 27–28.)  Plaintiff produced the documents, but the officers arrested him for driving with a revoked license.  (*See id.* ¶¶ 29–33.)  Plaintiff was held in custody for seven hours before being issued a DAT and released.  (*See id.* ¶ 34; Pl.'s Aff. Ex. X1 (Doc. No. 42-3) at 89 (DAT issued by Officer Disla on February 12, 2011).)

He alleges that he appeared in Kings County Criminal Court on March 17, 2011 to answer the charges and was told to wait for thirty to ninety days to receive a new court date, but later had a warrant issued for his arrest for failing to appear at a conference scheduled for May 11, 2011.  (*See* Proposed Am. Compl. ¶¶ 36–37; Pl.'s Aff. Ex. X3 (Doc. No. 42-3) at 93.)  He

---

[4] Plaintiff also includes allegations describing his appearance in court and the subsequent dismissal of the charges that arose out of the January 31, 2011 arrest, which were already described above.  (*See* Proposed Am. Compl. (Doc. No. 48-1) ¶¶ 22–23.)

claims the charges were ultimately dismissed on October 31, 2011. (*See* Proposed Am. Compl. ¶ 38; Pl.'s Apr. 10, 2013 Ltr. (Doc. No. 50) (explaining that ¶ 38 of the Proposed Amended Complaint, which states the date on which the charges related to the February 11, 2011 arrest were dismissed, should read October 31, 2011); Pl.'s Aff. Ex. X4 (Doc. No. 42-3) at 93 (Certificate of Disposition).)

As to the July 1, 2009 incident, plaintiff alleges that he was driving his car in Brooklyn when a police officer pulled him over and demanded his driver's license, registration, proof of insurance. (*See* Proposed Am. Compl. ¶¶ 44–46.) The police officer then issued plaintiff two summonses charging him with "unlicensed operator and unauthorized use of hire vehicle." (*See id.* ¶ 49; Pl.'s Aff. Ex. R1 & R2 (Doc. No. 42-3) at 44, 46.) Plaintiff alleges that these summonses were dismissed by the court on December 29, 2011. (*See id.* ¶ 52.) Finally, plaintiff adds generally several additional purported unconstitutional practices in his municipal liability claim. (*See id.* ¶ 77.)

Plaintiff argues that leave to amend should be granted because there is a "clear logical relationship between the parties and claims" included in the proposed amended complaint. (Pl.'s Mot. to Amend at 1 (ECF Pagination).) By letter, defendants oppose any amendment on futility grounds, arguing, *inter alia*, that the proposed new claims are similarly barred by the settlement agreement in *Orakwue I* or otherwise cannot be brought. (*See* Defs.' Opp. to Mot. to Amend (Doc. No. 49).)

## STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) requires the Court to examine the legal, rather than factual, sufficiency of a complaint. As required by Fed. R. Civ. P. 8(a)(2), a pleading must contain a "short and plain statement of the

claim showing that the pleader is entitled to relief."  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court considering a 12(b)(6) motion must "take[ ] factual allegations [in the complaint] to be true and draw[ ] all reasonable inferences in the plaintiff's favor."  *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009) (citation omitted).  A complaint need not contain "detailed factual allegations," but it must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555).  Rather, the plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  The determination whether "a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–158 (2d Cir. 2007)).

In addition, while *pro se* plaintiffs must satisfy these pleading requirements, federal courts are "obligated to construe a pro se complaint liberally." *Harris*, 572 F.3d at 71–72.  In other words, trial courts hold *pro se* complaints to a less exacting standard than they apply to complaints drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Boykin v. KeyCorp*, 521 F.3d 202, 213–14 (2d Cir. 2008) (citation omitted).  Since *pro se* litigants "are

10

entitled to a liberal construction of their pleadings, [their complaints] should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (citation and internal quotation marks omitted). When a *pro se* plaintiff has altogether failed to satisfy a pleading requirement, however, the court should not hesitate to dismiss his claim. *See Rodriguez v. Weprin*, 116 F.3d 62, 65 (2d Cir. 1997) (citation omitted).

## DISCUSSION

### A.  Defendant's Motion to Dismiss the Complaint

Liberally construing plaintiff's *pro se* complaint, plaintiff brings claims under 42 U.S.C. § 1983 for: (1) false arrest; (2) denial of a right to a fair trial; (3) illegal search and seizure under the Fourth Amendment; and (4) municipal liability.[5]  Each of these claims accrued before the Settlement Agreement was executed in April 2011.[6]  Defendants argue that, as a consequence,

---

[5] In his opposition papers, plaintiff asserts that he has also pled a claim of malicious prosecution relating to his January 31, 2011 arrest.  As discussed more fully below, even if such a claim is liberally read into the original complaint, it fails as a matter of law.

In addition, in both his original complaint and his proposed amended complaint, plaintiff makes passing reference to the Thirteenth Amendment and "involuntary servitude," however plaintiff fails to state a plausible claim.  In order to state such a claim, a plaintiff must demonstrate that "he has been subjected to compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results." *Ford v. Nassau Cnty. Exec.*, 41 F. Supp. 2d 392, 400-01 (E.D.N.Y. 1999) (quoting *Butler v. Perry*, 240 U.S. 328, 332 (1916)). Courts have construed involuntary servitude as "a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury." *United States v. Kozminski*, 487 U.S. 931, 952 (1988); *see also McGarry v. Pallito*, 687 F.3d 505, 511 (2d Cir. 2012). Here, the basis for plaintiff's purported claim is merely that he was unable to drive for an unspecified period of time.  Plaintiff makes no allegations that he was forced to work in any manner, let alone under the threat of physical restraint or physical injury. *See Estes-El v. City of New York*, 96-cv-3463 (JFK), 1998 U.S. Dist. LEXIS 1066 at 4 (S.D.N.Y. Feb. 4, 1998) (dismissing plaintiff's involuntary servitude claim where plaintiff fails to allege any facts in support of his claim).  Indeed, by bringing this claim in these terms, plaintiff is "trivializ[ing] the pain and anguish that the Thirteenth Amendment sought to remedy." *Ford*, 41 F. Supp. 2d . at 400.

Finally, nowhere in his complaint does plaintiff allege any state law claims, but rather makes abundantly clear that all claims are asserted pursuant to the United States Constitution through section 1983.  As such, the Court will not "read in" any such state law causes of action.

[6] It is well settled that a § 1983 claim accrues when a plaintiff knows or has reason to know of the harm. *See Van Wormer v. City of Rensselaer*, 293 F. App'x 783, 783 (2d Cir. 2008).  Specifically, a § 1983 claim for false arrest accrues when the alleged false imprisonment ends. *See, e.g., Frederick v. City of New York*, No. 13-cv-897, 2013 WL 1753063, at *5 (E.D.N.Y. Apr. 22, 2013); *Wharton v. Cnty. of Nassau*, No. 07-cv-2137, 2010 WL 3749077, at *3 (E.D.N.Y. Sept. 20, 2010) (false arrest claim accrues when plaintiff issued desk appearance ticket and released from police custody).  A denial of a right to a fair trial claim premised on the fabrication of evidence accrues when a plaintiff learns or should have learned that the evidence was fabricated and caused him some injury. *See, e.g.,*

the Settlement Agreement and the General Release bar plaintiff's current claims in their entirety. (*See* Def.'s Br. (Doc. No. 29) at 12–15 (ECF Pagination); Def.'s Reply (Doc. No. 33) at 9–15 (ECF Pagination).)  The Court agrees.

### 1.  The Settlement Agreement bars claims that "could have been alleged" in *Orakwue I.*

"It is well established that settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Tromp v. City of New York*, 465 F. App'x 50, 51 (2d Cir. 2012) (quoting *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002)); *see also Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007).  "While federal law governs the validity of releases of federal causes of action, [courts] will look to state law to provide the content of federal law in such cases." *Fernandez v. City of New York*, 502 F. App'x 48, 50 (2d Cir. 2012) (quoting *Olin Corp. v. Consol. Aluminum Corp.*, 5 F.3d 10, 15 (2d Cir. 1993)).  Under New York law, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." *Springle v. City of New York*, No. 11-cv-8827, 2013 WL 592656, at *3 (S.D.N.Y. Feb. 14, 2013) (quoting *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002)).

In the Settlement Agreement, plaintiff agreed to "release the defendants, and any present or former employees and agents of The City of New York or any agency thereof, from any and all liability, claims, or rights of action *which were or could have been alleged*" in *Orakwue I.*

---

*Mitchell v. Home*, 377 F. Supp. 2d 361, 373 (S.D.N.Y. 2005) (concluding that claim accrued upon plaintiff's arrest). A Fourth Amendment claim for an illegal search and seizure accrues when the property is taken.  *See Mallard v. Potenza*, No. 94-cv-223, 2007 WL 4198246, at *5 (E.D.N.Y. Nov. 21, 2007), *aff'd* 376 F. App'x 132 (2d Cir. 2010). Based on the facts alleged in the complaint, each of these claims accrued at when plaintiff was arrested on January 31, 2011.  Plaintiff's municipal liability claim also accrued at or near that time, as the January 31, 2011 was the second (or, according to the proposed amended complaint, the third) time plaintiff had been arrested and accosted following a traffic stop, suggesting that a municipal "policy or custom" was at play.  *See Facciolo v. City of New York*, No. 09-cv-1332, 2010 WL 3155251, at *5 (E.D.N.Y. Aug. 6, 2010) ("[A] plaintiff's § 1983 claim against a municipality does not accrue until he 'knew about, or at least had reason to come to know about, the policy or custom' upon which he bases his claim." (quoting *Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995))).

(Settlement Agreement ¶ 2 (emphasis added).)  In the General Release, the plaintiff agreed to release defendants "from any and all liability, claims, or rights or action *which were or could have been alleged in this action*, including claims for costs, expenses, and attorneys' fees."  (Pl.'s Aff. at 27 (Exhibit G1) (emphasis added).)  This language is clear and unambiguous.  *See Tromp*, 465 F. App'x at 52 (finding identical language in similar release to be "plain and unambiguous, [and] broad in scope."); *Fernandez*, 502 F. App'x at 49; *Springle*, 2013 WL 592656 at *4 (same); *Chepilko v. City of New York*, No. 11-cv-2878, 2012 WL 2792935, at *1, 3 (E.D.N.Y. Jul. 6, 2012) (same); *Lewis v. City of New York*, No. 10-cv-3266, 2011 WL 3273939, at *7 (E.D.N.Y. Jul. 29, 2011) (same).  Thus, if the claims asserted in the instant complaint "could have been alleged" in *Orakwue I*, then plaintiff has released the claims and they must be dismissed. [7]

To determine which claims could have been alleged in *Orakwue I*, the Court will turn to federal joinder and venue law.[8]  *See Springle*, 2012 WL 5289490, at *4; *Gittens v. City of New*

---

[7] Plaintiff argues that the Settlement Agreement and General Release are inadmissible because paragraph 4 of the Settlement Agreement states that the agreement "shall not be admissible in, nor is it related to, any other litigation or settlement negotiations."  (*See* Pl's Opp. at 16–17.)  Plaintiff is mistaken.  This language in paragraph 4 is designed to prevent the parties from using the Settlement Agreement to prove the merits of a subsequent litigation, not to prevent the parties from enforcing the Settlement Agreement, as defendants are seeking to do here.  Indeed, notwithstanding the presence of this language, courts have routinely considered similar settlement agreements and concluded that these agreements bar subsequent actions.  *See Tromp v. City of New York*, 10-cv-4973 (Doc. No. 11) (E.D.N.Y. 2010) (settlement agreement at issue in *Tromp*, 465 F. App'x at 52, that contains identical language in paragraph 4); *Springle v. City of New York*, 11-cv-175 (Doc. No. 11) (E.D.N.Y. 2011) (settlement agreement at issue in *Springle*, 2013 WL 592656, at *2, that contains identical language in paragraph 4); *Chepilko v. City of New York*, 10-cv-180 (Doc. No. 17) (S.D.N.Y. 2010) (settlement agreement at issue in *Chepilko*, 2012 WL 2792935, at *1, that contains identical language in paragraph 4).  Plaintiff's attempt to avoid the consequences of paragraph 2 of the Settlement Agreement and the entire General Release, therefore, is rejected.

[8] Relying on cases dealing with issues of *res judicata, see, e.g., NLRB v. United Techs. Corp.*, 706 F.2d 1254, 1259–60 (2d Cir. 1983); *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000), plaintiff argues that the instant claims could not have been asserted in *Orakwue I.*  (*See* Pl's Opp. at 13–16.)  However, whether a claim is barred under *res judicata* and whether a claim is barred by a contractual release are separate and distinct questions.  "The mere similarity between a portion of the release provision and a common judicial formulation of *res judicata* does not compel [courts] to interpret the release provision as co-extensive with *res judicata*" as "a claim may be released without having previously been litigated."  *Lewis*, 2011 WL 3273939, at *6.  Thus, even if the claims at issue here were not previously litigated – making *res judicata* inapplicable – they could still be barred by

*York*, No. 10-cv-8502, 2011 WL 10618708, at *2 (S.D.N.Y. May 11, 2011); *Chepilko*, 2012 WL 2792935, at *3; *Twine v. Four Unknown New York Police Officers*, No. 10-cv-6622, 2012 WL 6184014, at *8 (S.D.N.Y. Dec. 12, 2012), *report and recommendation adopted*, 2013 WL 314447 (S.D.N.Y. Jan. 25, 2013); *Peterson v. Regina*, No. 10-cv-1692, 2013 WL 1294594, at *5 (S.D.N.Y. Mar. 28, 2013).

### 2. Under federal joinder rules and venue law, plaintiff could have brought the instant claims in *Orakwue I.*

Whether a plaintiff may join one or more claims against a common defendant is governed by Fed. R. Civ. P. 18(a). Under Fed. R. Civ. P. 18(a), a "party asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or alternative claims, as many claims as it has against an opposing party." Here, plaintiff named the City as a defendant in both *Orakwue I* and the present action. In both actions, plaintiff asserted municipal liability claims against the City pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Thus, it is clear that pursuant to Rule 18(a), plaintiff could have brought all of his claims against the City in *Orakwue I.*[9]

Whether a plaintiff may join separate individual defendants in one lawsuit is governed by Fed. R. Civ. P. 20(a)(2). Rule 20(a)(2) states that persons may be joined in one action as defendants if:

---

the release. Since the principle ground for defendants' motion is release, the Court will analyze defendants' motion under joinder and venue law, as many other courts have done.

[9] Indeed, it would have been in plaintiff's interests to do so as it would have helped him demonstrate a "widespread practice" constituting an unconstitutional municipal policy. *See Chepilko*, 2012 WL 2792935, at *3 n.2; *Springle*, 2013 WL 592656, at *5; *see also Dellutri v. Village of Elmsford*, 895 F. Supp. 2d 555, 565 (S.D.N.Y. 2012) ("Normally, 'a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [municipality].'" (quoting *Newton v. City of New York*, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008))); *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823–24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." (plurality opinion)); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").

(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

(B) any question of law or fact common to all defendants will arise in the action.

"What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis." *Kehr ex rel. Kehr v. Yamaha Motor Corp. U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citation omitted). To determine whether one claim arises "out of the same transaction, occurrence, or series of transactions or occurrences" as another claim, courts typically ask whether "the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Twine*, 2012 WL 6184014, at *8 (citing *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)); *see also Gittens*, 2011 WL 10618708, at *2; *Peterson*, 2013 WL 1294594, at *6; *Springle*, 2013 WL 592656, at *4; *c.f. Tromp*, 465 F. App'x at 52 (noting that incident in second lawsuit was "similar in nature" to incident in first lawsuit and therefore concluding that allegations at issue in second lawsuit "could have been alleged" in first lawsuit); *Chepilko*, 2012 WL 2792935, at *3 (concluding that incidents were "substantially similar" as to comprise a "series of transactions"); *Castro v. City of New York*, No. 11-cv-5379, 2012 WL 5289490, at *3 (E.D.N.Y. Jun. 26, 2012) (examining "similarity of the claims"). Rule 20(a)'s requirements "are to be liberally interpreted," *Chepilko*, 2012 WL 2792935, at *3 (quoting *City of New York v. Joseph L. Balkan, Inc.*, 656 F. Supp. 536, 549 (E.D.N.Y. 1987)), since "[u]nder the [Federal Rules of Civil Procedure], the impulse is toward entertaining the broadest scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged," *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966); *see also Chepilko*, 2012 WL 2792935, at *4 (noting that aim of permissive joinder is to "conserve judicial and litigant

resources.").

Here, both requirements of Rule 20(a)(2) are met.  The incident alleged in the instant complaint and the incident in *Orakwue I* are clearly logically connected.  Indeed, the allegations in both complaints are strikingly similar.  Both complaints describe allegedly unwarranted traffic stops by individual NYPD officers, who requested plaintiff's driver's license, registration and proof of insurance and then allegedly unlawfully arrested and detained him.  Plaintiff's current complaint asserts several of the same causes of action that were asserted in *Orakwue I*.  And, perhaps most crucially, both complaints assert nearly identical municipal liability claims against the City.  In *Orakwue I*, plaintiff alleged that Officer Keith Doumas and the unnamed officers "engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution."  (*Orakwue I* Compl. ¶ 39.)  Plaintiff alleged that these policies included, but were not limited to:

> i.  arresting individuals regardless of probable cause in order to inflate the officer's arrest statistics;
> ii.  arresting innocent persons notwithstanding the existence of credible evidence which exonerates the accused of any criminal wrongdoing; and;
> iii.  arresting individuals regardless of probable cause."

(*Orakwue I* Compl. ¶ 40.)

In the instant complaint, plaintiff alleges that Officer Victoria DeWitt "engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the Constitution."  (*Orakwue II* Compl. ¶ 41.) Plaintiff alleges that these policies include, but are not limited to:

> i.  arresting individuals regardless of probable cause in order to inflate the officer's arrest statistics;
> ii.  Arresting individuals and using the vulnerable situation of the individuals to improperly touch their genitals, sexually assault and sexually harass them;
> iii.  arresting innocent individuals and racially harassing, racially insulting and racially humiliating them;

16

iv.  Stopping, searching and arresting individuals based on their racial profile;
v.  stopping, searching and arresting individuals based on their ethnic origin and their country of origin;
vi.  Stopping, searching arresting individuals and subjecting individuals through compulsion to involuntariness and to act against the individual's will;
vii.  Arresting innocent persons notwithstanding the existence of credible evidence which exonerates the accused of any criminal wrongdoing; and;
viii.  Arresting individuals regardless of probable cause.

(*Orakwue II* Compl. ¶ 42.)  As is readily apparent, three of the purported unconstitutional policies alleged here are identical to the purported unconstitutional policies alleged in *Orakwue I*. (*Compare Orakwue I* Compl. ¶ 40(i) *with Orakwue II* Compl. ¶ 42(i); *Orakwue I* Compl. ¶ 40(ii) *with Orakwue II* Compl. ¶ 42(vii); *Orakwue I* Compl. ¶ 40(iii) *with Orakwue II* Compl. ¶ 42(viii).)  Although plaintiff identifies several additional purported unconstitutional policies in the instant complaint, the three "overlapping allegations of citywide practices plainly establish a logical relationship between the claims" asserted in the two actions since, in essence, plaintiff is alleging "that the acts at issue [here] were all performed pursuant to the same City policy." *Springle*, 2013 WL 592656, at *5; *see also id.* at *5 n.5 (noting that although plaintiff alleged an additional unconstitutional policy in the second action, "plaintiff established a logical relationship between the claims in the two cases simply by alleging that there was at least one City policy that accounted for all his claims.").  Therefore, the claims in the instant complaint arise from the "same transaction, occurrence, or series of transactions or occurrences" as *Orakwue I* for the purposes of Rule 20(a).  *See Springle*, 2013 WL 592656, at *5; *Chepilko*, 2012 WL 2792935, at *3 (finding common *Monell* claim against City were "substantially similar in type and purpose to comprise a 'series of transactions'" under Rule 20(a)(2)); *Gittens*, 2011 WL 10618708, at *2 ("While these two arrests are separate and distinct incidents, due to the common *Monell* claims, they qualify as part of the same series of transactions."); *cf. Twine*, 2012 WL 6184014, at *10 (noting that in certain cases *Monell* claims provided "an essential nexus between

17

otherwise unrelated allegations of civil rights violations by individual officers.").

The overlapping municipal liability claims in *Orakwue I* and the current complaint in turn give rise to questions "of law or fact common to all defendants."  *See* Fed. R. Civ. P. 20(a)(2)(B). Whether the NYPD has a policy of "arresting individuals regardless of probable cause in order to inflate the officer's arrest statistics," "arresting innocent persons notwithstanding the existence of credible evidence which exonerates the accused of any criminal wrongdoing," and/or "arresting individuals regardless of probable cause" and whether the individual officers acted pursuant to these policies when engaging in the purported unconstitutional conduct are factual questions that lie at the heart of plaintiff's municipal liability claims in both actions.  *See Springle*, 2013 WL 592656, at *7.  Thus, the second prong of Rule 20(a)(2) is clearly met.  Because the claims asserted in the instant action arise "out of the same transaction, occurrence or series of transactions or occurrences" as the claims in *Orakwue I*, *see* Fed. R. Civ. P. 20(a)(2)(A), and involve at least one "question of law or fact common to all defendants," *see* Fed. R. Civ. P. 20(a)(2)(B), the claims against the individual defendants in the current action could have been joined in *Orakwue I* pursuant to Rule 20(a).

Plaintiff offers two principal arguments in opposition to this conclusion, none of which have merit.  First, plaintiff argues that the claims in the instant action could not have been raised in *Orakwue I* because the arrest on January 31, 2011 had not yet occurred when the complaint in *Orakwue I* was filed on September 29, 2010.  (Pl's Opp. at 13, 17.)  However, under Rule 15, plaintiff could have sought leave to amend his complaint to add the allegations based on the January 31, 2011 arrest.  Since "[t]he court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), plaintiff, who was represented by counsel at the time, undoubtedly would have been able to amend his complaint had he sought leave to do so.  The fact that he

ultimately chose not to is immaterial to the joinder analysis.  *See Chepilko*, 2012 WL 2792935, at *4 n.3.

Second, plaintiff argues that the incident alleged in the instant complaint did not constitute the same transaction or occurrence as the incident in *Orakwue I* because the incidents occurred in different places, at different times, and involved different officers.  (*See* Pl's Opp. at 12–13, 15–16.)  It is ironic that plaintiff argues that the January 31, 2011 arrest that forms the basis of his current complaint could not have been alleged in *Orakwue I*, while at the same time arguing that he should be granted leave to amend his complaint to include claims based on unrelated arrests occurring on February 11, 2011 and July 1, 2009.  By taking this position, plaintiff is acknowledging what numerous courts confronting this issue have found – that allegations of civil rights violations by different individual officers which occur at different times and in different places can be logically connected such that they can be brought in one suit.  *See Tromp*, 465 F. App'x at 52 (noting that although plaintiff's claims "involved a different arrest," the incident was "similar in nature" to the previous action and, therefore, "could have been alleged in that action."); *Gittens*, 2011 WL 10618708, at *2–3 (finding that claims from two different arrests could have been brought in one suit under liberal joinder standards); *Springle*, at *2, 5 (finding that an arrest following traffic stop and separate arrest months earlier outside of a movie theater were part of the same "series of transactions or occurrences" for the purposes of Rule 20); *Chepilko*, 2012 WL 2792935, at *4 (concluding that, "[d]espite minor differences in the facts . . . the incidents involved such similar circumstances [that] there is no doubt plaintiff could have joined the claims now alleged" with the claims in earlier action).  Here, despite a few factual differences, at their core each incident involves police officers who allegedly accosted, arrested and detained the plaintiff following a traffic stop allegedly initiated by an

19

unconstitutional City policy.  Thus, plaintiff could have alleged the instant claims in *Orakwue I* under the liberal joinder rules.

In short, under Rules 18 and 20, plaintiff could have joined the instant claims against the City and DeWitt with the claims asserted against the defendants in *Orakwue I*.  Venue would have been proper if he had done so.[10]  Therefore, the instant claims "could have been alleged" in *Orakwue I*.  Because plaintiff agreed to "release the defendants . . . from any and all liability, claims, or rights of action which were or could have been alleged" in *Orakwue I*, the claims in the instant complaint have been released.  Accordingly, defendants' motion to dismiss is granted and the current complaint is dismissed.

### B.  Malicious Prosecution Arising out of Plaintiff's January 31, 2011 Arrest

In his original complaint, plaintiff claims to have pled a claim for malicious prosecution arising out of his January 31, 2011 arrest.  (*See, e.g.*, Pl's Opp. at 14.)   Even assuming that such a claim was pled, it must be dismissed as a matter of law.

To state a claim for malicious prosecution under section 1983, a plaintiff must establish (1) commencement of a criminal proceeding, (2) favorable termination of the proceeding, (3) lack of probable cause, and (4) institution of the proceedings with actual malice.  *See Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003); *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997). Additionally, there must be a post-arraignment seizure, the claim being grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures.  *See Jocks*, 316 F.3d at 136.

---

[10] Under 28 U.S.C. § 1391(b)(2), "[a] civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . ."  The November 25, 2009 arrest underlying the *Orakwue I* action and the January 31, 2011 arrest underlying the instant action both occurred within the Eastern District of New York.  Thus, venue would have been proper if plaintiff joined the current claims to the claims asserted in *Orakwue I*.

The Second Circuit has held that a post-arraignment defendant who is "obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required" suffers a Fourth Amendment deprivation of liberty. *See Murphy*, 118 F.3d at 947; *Jocks*, 316 F.3d at 136 (concluding that "the requirements of attending criminal proceedings and obeying the conditions of bail" constitute a post-arraignment seizure); *Rohman v. New York City Transit Authority*, 215 F.3d 208, 215-16 (2d Cir. 2000) (finding Fourth Amendment implicated where plaintiff "alleged that he was required, as a condition of his post-arraignment release, to return to court on at least five occasions before the charges against him were ultimately dropped," and where he was obliged by New York statute to "render himself at all times amenable to the orders and processes of the court") (internal quotation marks omitted).

However, "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions,  does not constitute a Fourth Amendment seizure." *Swartz v. Insogna*, 704 F.3d 105, 111-112 (2d Cir. 2013) (citing *Burg v. Gosslein*, 591 F.3d 95, 98 (2d Cir. 2010)).   "A charge and a warrantless arrest – concluding with the issuance of the desk appearance ticket – may be a sufficient deprivation of liberty to support a claim for false arrest, but do not amount to a prosecution and cannot alone support a claim for malicious prosecution, which typically implicates a post-arraignment deprivation of liberty or at least an arrest pursuant to a warrant."  *Katzev v. Newman*, No. 96-cv-9138, 2000 WL 23229, at *4 (S.D.N.Y. Jan. 12, 2000) (citations omitted); *see also Puckowitz v. City of New York*, No. 09-cv-6035, 2010 WL 3632692, at *5 (S.D.N.Y. Sept. 17, 2010) ("[T]he initial steps taken by the New York City Police Department to bring charges against [plaintiff]—the issuance of the desk appearance ticket and the signing of the criminal complaint – do not constitute the initiation of criminal proceedings and cannot form the basis of a claim for malicious prosecution."); *Mesa v.*

*City of New York*, No. 09-cv-10464, 2013 WL 31002, at *17 (S.D.N.Y. Jan. 3, 2013)

("[Plaintiff's] malicious prosecution claims also fail because a warrantless summons, demanding

only a court appearance, cannot provide the basis for a malicious prosecution claim, under either

§ 1983 or state law.").

Here, following his arrest on January 31, 2011, plaintiff was issued a desk appearance

ticket, which only required a later appearance in court.  He makes no allegations of any further

restrictions or deprivations of his liberty.  Indeed, according to plaintiff, he never appeared

before a judge to answer for the charges asserted in the desk appearance ticket arising out of this

arrest.  Thus, in the current complaint, plaintiff has failed to plausibly allege a malicious

prosecution claim.[11]

### C.  Plaintiff's Motion to Amend

Under Fed. R. Civ. P. Rule 15(a)(2), courts "should freely give leave [to amend] when

justice so requires."  Ordinarily, "[a] pro se complaint 'should not [be] dismiss[ed] without [the

Court's] granting leave to amend at least once when a liberal reading of the complaint gives any

indication that a valid claim might be stated.'"  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir.

2010) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)).  However, leave to amend

may properly be denied upon a showing of "undue delay, bad faith or dilatory motive on the part

of the [moving party], repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the [nonmoving party,] . . . [or] futility." *Foman v. Davis*, 371 U.S. 178, 182

(1962).  An amendment is futile where "the proposed claim could not withstand a motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243,

258 (2d Cir. 2002).  As discussed below, plaintiff's motion to amend is granted in part.

---

[11] Because it is apparent in the pleadings that plaintiff's malicious prosecution claim fails as a matter of law, the
Court need not consider whether it could have been alleged in *Orakwue I*.

Here, plaintiff has fully briefed and vigorously advanced his motion to amend,[12] and in so doing, seeks to add claims related to two additional traffic stops occurring on February 11, 2011 and July 1, 2009.[13]  Plaintiff also seeks to add as defendants the officers allegedly involved in these encounters.  However, plaintiffs proposed claims relating to (1) false arrest, (2) denial of a right to a fair trial, (3) illegal search and seizure under the Fourth Amendment, and (5) municipal liability are barred by the *Orakwue I* Settlement Agreement and General Release.  As with the claims related to the January 31, 2011 arrest, each of those claims accrued before these two agreements were executed in April 2011.  arrest, and plaintiff alleges that these allegedly unconstitutional arrests were conducted, in part, pursuant to the same set of City policies as the arrest at issue in *Orakwue I*.  (*Compare Orakwue I* Compl. ¶ 40(i) *with* Proposed Am. Compl. ¶ 77(a); *Orakwue I* Compl. ¶ 40(ii) *with* Proposed Am. Compl. ¶ 77(j); *Orakwue I* Compl. ¶ 40(iii) *with* Proposed Am. Compl. ¶ 77(k).)  This common set of alleged policies provides "an essential nexus between otherwise unrelated allegations of civil rights violations by individual officers," *Twine*, 2012 WL 6184014, at *10, thereby logically connecting these incidents with the incident in *Orakwue I*.  Because these claims are logically connected to the claims in *Orkawue I*, they "could have been alleged" in *Orakwue I* pursuant to Fed. R. Civ. P. 20(a).  As such, and for the same reasons discussed above with regard to the January 31, 2011 arrest, these claims are barred by the Settlement Agreement and General Release.  Accordingly, plaintiff's motion to amend the complaint to add these particular claims and defendants as to the two new incidents is denied as futile.

---

[12] Plaintiff also seeks leave to strike defendants' opposition to the Motion to Amend for irregularities in service and compliance with Local Rule 7.2.  (*See* Doc. No. 50.)  The Court denies the Motion to Strike for the reasons set forth in defendants' papers in response, (Doc. No. 52), including, *inter alia*, based on this Court's conclusion that plaintiff has suffered no prejudice as a result of any of the alleged procedural irregularities.

[13] Plaintiff also seeks to add allegations related to the purported dismissal of the charges that arose out of the January 31, 2011 arrest.  However, as discussed above, any malicious prosecution claims based on the January 31, 2011 arrest fail as a matter of law because plaintiff has not suffered a Fourth Amendment seizure.

There is, however, an additional wrinkle to plaintiff's Motion to Amend.  The proposed amended complaint, read broadly, *might* give rise to malicious prosecution claims arising out of the February 11, 2011 and July 1, 2009 incidents.  If so, they would not be barred by the Settlement Agreement and General Release.

A malicious prosecution claim accrues when the criminal proceedings are terminated in a plaintiff's favor.  *Frederick v. City of New York*, No. 13-cv-897, 2013 WL 1753063, at *6 (E.D.N.Y. Apr. 22, 2013).  Here, plaintiff alleges that the charges related to both of these incidents were dismissed in his favor after the Settlement Agreement and General Release were executed.  (*See* Proposed Am. Compl. ¶ 52 (alleging that summons related to July 1, 2009 incident were dismissed on December 29, 2011); Pl.'s Apr. 10, 2013 Ltr. (Doc. No. 50) (explaining that ¶ 38 of the Proposed Amended Complaint, which states the date on which the charges related to the February 11, 2011 arrest were dismissed, should read October 31, 2011).)  Thus, as plaintiff correctly notes, these claims could not have been alleged in *Orakwue I*, and would not be barred by the Settlement Agreement and General Release.

However, this, alone, does not mean plaintiff has plausible malicious prosecutions claims to add to this action.   As discussed above, a malicious prosecution claim requires a post-arraignment deprivation of liberty, and the issuance of a non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure for purposes of a malicious prosecution claim.  *Compare Burg v. Gosselin*, 591 F.3d at 98 (obligation to appear in court in response to a pre-arraignment summons not a seizure) *with Swartz v. Insogna*, 704 F.3d at 112 (describing *Burg's* discussion as "dictum" and holding the obligation to appear in criminal proceeding was a sufficient deprivation of liberty);  *see also Kennedy v. City of New York*, 11-cv-1451 (ERK), 2013 U.S. Dist. LEXIS 96096, 13-14

(E.D.N.Y. July 10, 2013) (while dismissing malicious prosecution on other grounds, noting that multiple appearances before the charges were dismissed could constitute a sufficient deprivation of liberty); *Peruta v. City of Hartford*, 09-cv-1946 (VLB), 2012 U.S. Dist. LEXIS 120228, 60-63 (D. Conn. Aug. 24, 2012) (issuance of a parking ticket does not constitute a seizure within the meaning of the Fourth Amendment); *Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 228 (E.D.N.Y. 2010) on reconsideration in part, 814 F. Supp. 2d 242 (E.D.N.Y. 2011) ("No court has held that a summons alone constitutes a seizure, and we conclude that a summons alone does not equal a seizure for Fourth Amendment purposes. To hold otherwise would transform every traffic ticket and jury summons into a potential Section 1983 claim.")

As to this element of any potential malicious prosecution claims related to the July 2009 and February 2011 incidents, plaintiff's amended complaint is hardly a model of clarity. First, plaintiff alleges in relevant part that on July 1, 2009, plaintiff neither possessed nor sought a New York Driver's license,[14] but that two summonses were issued for unlicensed operator and unauthorized use of a vehicle for hire, both of which included a presumably false or incorrect New York driver's license number; that in December 2011 "plaintiff's driver license was suspended pending a hearing of the case on December 29, 2011," and that on that same date, the two summonses were dismissed. (Proposed Am. Compl. ¶¶ 50-52.) Plaintiff does not allege that he went to court or otherwise suffered any deprivation of liberty. As to the February 11, 2011 incident, plaintiff alleges in relevant part that he went to court on March 17, 2011 and was told to "wait for 30 to 90 days to receive a Court date;" that on May 11, 2011 a warrant was issued by the judge for "allegedly failing to appear for arraignment," and that on October 31, 2012, "the case and charges were dismissed by the court." (Proposed Am. Compl. ¶¶36–38.) These

---

[14] This concession raises another potential infirmity in plaintiff's malicious prosecution claim: that the police officers may, indeed, have had probable cause to arrest defendant for driving without a license, which would be fatal to any such claim.

allegations are more aligned with the requirements of *Burg* and *Swartz*, but still leave much to be desired in terms of sufficiency of pleading.

However, mindful of the *pro se* status of plaintiff, and in an effort to bring to quicker resolution to these claims, the Court will allow plaintiff to proceed with malicious prosecution claims based the February 11, 2011, and July 1, 2009 incidents as pled in the Proposed Amended Complaint. Plaintiff's Motion to Amend is denied with respect to all other claims. This by no means suggests that plaintiff's claims are meritorious, as there are many facts and circumstances surrounding plaintiff's amended claims that may pose obstacles to their success on the merits. [15] However, at this stage, the Court cannot conclude as a matter of law that these two claims must be dismissed.

---

[15] Indeed, plaintiff himself has appended to his opposition papers a voluminous set of documents, some of which seem to run counter to some aspects of plaintiff's malicious prosecution claims, including some that may shed additional light on the probable cause analysis. Those documents are not properly considered on this motion, and many require explanation. As such, the Court holds no opinion as to the ultimate merits or success of these malicious prosecution claims.

**CONCLUSION**

For the reasons set forth above, defendants' motion to dismiss the original complaint

(Doc. No. 26) is granted, and plaintiff's motion to amend (Doc. No. 48) is granted in part.  As

such, the only claims that survive are two claims of malicious prosecution, one each relating to

the incidents occurring on July 1, 2009 and February 11, 2011, as pled in the Proposed Amended

Complaint (Doc. No. 48-1).

The Clerk of Court is directed to amend the caption of this action to terminate defendant

P.O. Dewitt Victoria, and to add as defendants P.O. Disla Willian,  Tax Reg. No. 948897, 73

Pct., P.O. Rampersand, Badge No. 5899, 73 Pct., and P.O. Centurion, I.D. No. 925051, 77 Pct..

This matter is re-committed to Magistrate Judge Scanlon for discovery on these claims,

and supervision of all other pre-trial matters.  The Magistrate Judge shall address with the parties

service of any summons and complaint on the newly-added defendants.

The Clerk of Court is directed to mail a copy of the Memorandum and Order to plaintiff

at the address listed for him on the docket.

SO ORDERED.

Dated: Brooklyn, New York
       September 25, 2013

*Roslynn R. Mauskopf*

_____

ROSLYNN R. MAUSKOPF
United States District Judge

27